IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 12-cr-491-1 & 2 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| NIXON ENCINARES and ) | |
| MARIA BUENDIA ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Government's motion for entry of preliminary orders of forfeiture as to Defendants Nixon Encinares and Maria Buendia [310]. The Court has taken extensive briefing and argument on the issue [see 324, 330, 340, 341] and now grants the Government's motion in part and requests that the Government submit a proposed order consistent with the discussion below.

**I.      Background**

On April 24, 2013, Defendants Encinares and Buendia pleaded guilty to conspiring to offer and pay kickbacks to various individuals, in violation of 18 U.S.C. § 371 and the Anti-Kickback Statute, 42 U.S.C. § 1320a7b(b)(2)(A). [See 92, 94]. On October 16, 2014, in advance of the sentencing hearing in this case, the Government filed a motion for entry of preliminary orders of forfeiture against Defendants pursuant to 18 U.S.C. § 982(a)(7). [See 310]. In that initial motion the Government sought to forfeit all right, title, and interest Defendants had, in funds in the amount of $2,029,777, the undisputed amount of net profits that Defendants' received in reimbursements from Medicare for providing treatment to patients who were referred as a result of Defendants' illegal kickback payments.

Prior to Defendants' sentencing, the Court entered preliminary orders of forfeiture for seven co-Defendants totaling approximately $558,150. [See 193, 203, 218, 220, 260, 301, 320.]

1

At least approximately $325,800 has been paid to date by two Defendants against whom a forfeiture judgment was entered. [See 225, 244]. Unless additional payments have been made since the briefing on this matter, approximately $232,350 remains outstanding. The Government agrees that the paid forfeiture judgments totaling $325,800 should be credited against the total $2,029,777 forfeiture judgment sought against Defendants Encinares and Buendia. Therefore, the amount of funds that the Government now seeks to forfeit from Defendants is reduced to $1,703,977.

**II.     Analysis**

Section 982(a)(7) requires the Court, upon imposing sentence for a federal health care offense, to "order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." The gross proceeds traceable to Defendants' kickback conspiracy are the Medicare reimbursements that they received for treating patients referred to Grand as a result of their illegal payments. The Government and the Probation Officer calculated this figure by totaling Grand's net profits – income and officer compensation – as reported on the company's tax returns between 2006 and March 2011. Defendants' legitimate business expenses were excluded from this calculation. The Government and the Probation Officer then multiplied the resulting figure, $3,499,616, by 58%, the percentage of Medicare reimbursements that were paid as a result of Grand's treatment of patients who were referred by virtue of kickbacks. The resulting figure of $2,029,777 was not disputed by Defendants as the applicable amount for determining Defendants' offense level under Guidelines §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(I).

Defendants acknowledged in their plea agreements that they used approximately $1,131,750 of the profits that they received from the Medicare reimbursements to pay cash

kickbacks for patient referrals. Of the $1,131,750, defendants are joint and severally liable with the co-Defendants who received the kickbacks for $558,150, the total amount of forfeiture orders entered to date. See *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("[T]he proceeds of a conspiracy are a debt owed by each of the conspirators."). The balance of the more than $2 million in payments from the Government, approximately $898,027, reasonably estimates the amount of Government funds that Defendants retained for their own benefit, as determined by a comparison with their tax returns for the years during which the crime occurred.

After its initial review of the case law, the Court entered an order [339] requesting that the parties submit supplemental briefing on the following question:

> Why, under *US v. Swanson*, 394 F.3d 520, 528-29 (7th Cir. 2005), and *US v. Genova*, 333 F.3d 750, 761 (7th Cir. 2003), isn't the answer to the amount of the forfeiture $898K, as forfeiture is gain-based and that was the amount of gain to Defendants Encinares and Buendia after subtracting the bribes, which were a "cost of doing business" that can be deducted from their forfeiture amount?

That question took into account the Seventh Circuit's admonition that "[r]estitition is loss based, while forfeiture is gain based." *Genova*, 333 F.3d at 761. It also took into account the Seventh Circuit's recognition that, when considering the amount attributable to a defendant convicted of paying a bribe, it can be appropriate to deduct the amount of the bribe as a "cost of doing business." *Id*. However, the Court's question overlooked the fact that a person paying a kickback (like Defendants here) and the persons receiving the kickback (such as the co-Defendants) are "partners in crime," who "are jointly and severally liable for the forfeitable proceeds of their activities." *Id*. Thus, as the Seventh Circuit explained in *Genova*, "the kickback, after being subtracted as a cost from Gulotta's perspective, is added back as proceeds from Genova's." *Id*. So, too, are the kickbacks here subtracted as a cost from Defendant's perspective, but then added back as proceeds from the perspective of the jointly and severally

3

liable co-Defendants. The upshot is that the Government's methodology for calculating the forfeiture amounts is correct under controlling circuit precedent.

Defendants do not have a legally compelling way of distinguishing *Genova* or the other cases cited by the Government. To be sure, Defendants point to a number of mitigating factors—that the treatment for which Medicare reimbursed Grand was medically necessary; that Defendants did not engage in upcoding; that there was no real loss to Medicare from Defendants' scheme. All of these factors were taken into account under Section 3553(a) in imposing a lenient sentence well below the advisory Guideline range even after taking into account the 5K1.1 discount recommended by the Government. But they do not appear to be relevant for purposes of the forfeiture statute.

Defendants also raise a constitutional challenge to the amount of the forfeiture requested in this case, arguing that the amounts sought by the government are "disproportionate to the gravity of the offense in this case," and therefore would violate the Eighth Amendment's Excessive Fines Clause if entered. [324, at 3 (citing *United States v. Bajakajian*, 524 U.S. 321, 337 (1998)).] The Seventh Circuit has identified four factors to be considered in determining whether an amount of forfeiture is unconstitutional: (1) "the essence of the crime and its relation to other criminal activity"; (2) "whether the defendant fits into the class of person for whom the statute was principally designed"; (3) "the maximum fine and sentence that could have been imposed"; and (4) "the nature of the harm caused by the offense." *United States v. Malewicka*, 664 F.3d 1099, 1104-07 (2011) (citing *Bajakajian*, 524 U.S. at 337-39).

Unfortunately for Defendants, on balance these factors support the Government's position in regard to the amount of the forfeiture. In regard to the first factor, the crime itself was a calculated effort on Defendants' part to enhance their business by paying illegal kickbacks

4

to doctors and other health care professionals. It took place over a lengthy period of time and involved more than $1 million in unlawful payments. And while some of the doctors plainly had their hands out and were in fact pressuring Defendants to increase their payments, others were reluctant participants who probably would not have become felons but for Defendants' enthusiastic implementation of their business plan, which rested on obtaining referrals by paying kickbacks.

The second factor likewise favors the Government's view. For obvious reasons, Defendants fall within the class of persons for whom the statute, colloquially known as the Anti-Kickback Statute, was designed.

As to the third factor, a violation of 18 U.S.C. § 371 carries a maximum term of imprisonment of 5 years and a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater. See also 18 U.S.C. § 3571. Here, Defendants grossed approximately $8,264,160 in Medicare reimbursements as a result of their kickback scheme, which yields a maximum fine of $16,528,320. In this context, a forfeiture of less than $2,000,000 is not excessive. As set forth in Defendants' PSRs, their guidelines sentencing range (before applying the cooperation discount) was 37 to 46 months' imprisonment and the fine range was $7,500 to $75,000. See U.S.S.G. § 5E1.1(c)(2) & (3). Yet, Guideline § 5E1.1(c)(4) provides that "[s]ubsection (c)(2), limiting the maximum fine, does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000," as Defendants were in this case.

In the Court's view, the fourth factor cuts both ways. On the one hand, as Defendants emphasize, the treatment for which Medicare reimbursed Grand was medically necessary, Defendants did not engage in upcoding, and there was no real financial loss to Medicare from

5

Defendants' scheme in the sense that Medicare would have paid the same amounts to properly-licensed providers because the treatments were medically appropriate. On the other hand, as Defendants also acknowledged at sentencing, their conduct undermined the integrity of the system and the otherwise level playing field for participating Medicare providers.

In sum, given the length of the offense, the amount of kickbacks paid and improper benefit received, and the fact that the proposed forfeiture judgment is far less than the statutory maximum fine, the Court concludes that a forfeiture judgment of approximately $1,700,000, though substantial, does not contravene the Eighth Amendment.

In the end, Defendants ask the Court to impose in the forfeiture judgment "an amount that is realistic, reasonable and affordable." Defendants also note that a forfeiture judgment for $69,000 was entered in a similar case in this district. The Court acknowledges the equitable arguments for a lower forfeiture amount and the high likelihood that neither Defendant here will ever be in position to pay the entire amount of the forfeiture that will loom over their heads for years to come. Indeed, it may be the case that the amount that Defendants actually will be able to pay is closer to $69,000 than $1.7 million, and that might be a reason for the Government to consider negotiating with similarly situated defendants a "realistic" payment amount that can be incorporated into a forfeiture order. But the Government is entitled to enforce its forfeiture rights to the full extent of the law, and in some cases it may be unwilling to discount the possibility that a defendant may strike it rich someday, in which case the Government can hardly be faulted for seeking the maximum authorized forfeiture judgment. While the Court is sympathetic to Defendants' concerns about being "encumbered by a crushing debt for years to come," that raises a policy argument that is best directed to Congress. The Court does not see any basis in the statutory language or the pertinent case law to invoke equitable principles in this

instance, nor have Defendants cited to any Supreme Court or Seventh Circuit authority that suggests a means to that end. Accordingly, the Government's motion is granted in part and the Government is directed to submit a proposed order that is consistent with this opinion. That order should reflect all payments received from jointly and severally liable co-Defendants as of the date that it is submitted.

### III. Conclusion

For the reasons explained above, the Government's motion for entry of preliminary orders of forfeiture as to Defendants Nixon Encinares and Maria Buendia [310] is granted in part. The Government is directed to submit a proposed order that is consistent with this opinion and that reflects all payments received from jointly and severally liable co-Defendants as of the date that it is submitted. The Court will then incorporate the forfeiture order into the judgment and commitment order and conclude the case.

Dated: February 5, 2015

Robert M. Dow, Jr.
United States District Judge